## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| BATTENFELD TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> BIRCHWOOD LABORATORIES, INC., <br><br> Defendant. | No. 11-cv-00883-MJD/JJK <br><br> **FIRST AMENDED COMPLAINT FOR PATENT FALSE MARKING, LANHAM ACT FALSE ADVERTISING, VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT, AND MINNESOTA COMMON LAW UNFAIR COMPETITION** <br><br> **JURY TRIAL DEMANDED** |

Pursuant to Federal Rule of Civil Procedure 15(b), plaintiff Battenfeld Technologies, Inc. ("BTI") submits its First Amended Complaint against defendant Birchwood Laboratories, Inc. ("Birchwood") alleging as follows:

### NATURE OF THE ACTION

1.      This is a civil action to enjoin and remedy: patent false marking under 35 U.S.C. § 292, false advertising under 15 U.S.C. § 1125(a), deceptive trade practices under Chapter 325D of the Minnesota Statutes, and Minnesota common law unfair competition.

2.      This action arises out of Birchwood's false patent marking, false advertising, deceptive trade practices, and unfair competition with respect to the marketing, advertising, promotion and sales of its "flake-off" shooting targets.

### PARTIES

3.      BTI is a Missouri corporation having its principal place of business at 5885 W. Van Horn Tavern Road, Columbia, Missouri 65203.  BTI designs, invents, markets and sells

1-   FIRST AMENDED COMPLAINT

products for use in the sport-shooting industry, including shooting targets.

4.      Upon information and belief, defendant Birchwood is a Minnesota corporation having its principal place of business at 7900 Fuller Road, Eden Prairie, Minnesota 55344. Birchwood is engaged in the business of making and selling shooting sports products and other products, on its own and through its agents, including the false-marked shooting targets that it sells in competition with shooting targets sold by BTI.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the claims of this Complaint under the Lanham Act, 15 U.S.C. § 1121(a), and under 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and 1355, because these claims involve a federal question and arise under the patent and unfair competition laws of the United States.  This Court has supplemental jurisdiction over BTI's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to BTI's federal patent and unfair competition claims that they form part of the same case or controversy.

6.      This Court has personal jurisdiction over defendant Birchwood because Birchwood resides and does business in this judicial district.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because Birchwood resides in this district, a substantial part of the events giving rise to the claims occurred in this district and Birchwood is subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

### A.      The Parties Are Direct Competitors in the Market for Flake-Off Shooting Targets

8.      BTI is in the business of inventing, designing, marketing and selling products for use in the sport-shooting industry.  BTI has invested significant resources in developing,

2-   FIRST AMENDED COMPLAINT

patenting, marketing and selling sport shooting products.

9.      Birchwood and BTI are competitors in the sport-shooting industry.  Birchwood and BTI are the only two significant suppliers of "flake-off" shooting targets to U.S. consumers and are in direct competition with one another with respect to the marketing and sales of such products.

10.     "Flake-off" shooting targets are targets constructed such that impact by a projectile causes an outer ink layer on the surface of the target to flake off in an area surrounding the projectile-impact site, exposing an underlying surface or ink layer that typically has a contrasting appearance (called a "halo"), thereby rendering more visually obvious the location of the impact site.  A representative flake-off shooting target, showing a yellow flake-off "halo" around bullet holes, is reproduced below:



11.     The product partially depicted above is BTI's patented Orange Peel® flake-off shooting target that BTI introduced to the flake-off target market in about January 2006.

 3-   FIRST AMENDED COMPLAINT

12.     Birchwood currently markets at least three different shooting target product lines that include flake-off technology: Shoot-N-C®, Dirty Bird®, and Big Burst™.

13.     On information and belief, Birchwood began selling its Shoot-N-C® brand flake-off target in about 1995 and was the sole significant producer of flake-off targets until about 2003, when BTI entered the market with its Caldwell Insta-View™ brand flake-off target.  BTI's Caldwell Insta-View™ brand flake-off target was essentially a simplified version of Birchwood's Shoot-N-C® target.

14.     On information and belief, Birchwood introduced its Dirty Bird® brand flake-off target in about 2004 and its Big Burst™ brand flake-off target in about 2007.

15.     BTI currently markets shooting target products that include flake-off technology under the brand name Orange Peel®.  BTI's Orange Peel® product line, which includes silhouette, sight-in, and bull's-eye targets, competes directly with Birchwood's Shoot-N-C® product line. BTI introduced its Orange Peel® target product line to the market in 2006 and has since continuously marketed and sold its Orange Peel® targets.  BTI's Orange Peel® products are protected by U.S. Patent No. 7,631,877 ("the '877 patent"), which the U.S. Patent & Trademark Office duly and legally issued to BTI on December 15, 2009.

**B.     Birchwood Acquires The Edwards Patents in About 1995**

16.     In about 1995, Birchwood entered into a written agreement with a company named Ontario, Inc., whereby Birchwood obtained an exclusive interest in all rights to U.S. Patent No. 5,188,371 ("the '371 patent").  On information and belief, Ontario, Inc. was owned and controlled by A.W. Edwards, the sole named inventor on the '371 patent.  On information and belief, Mr. Edwards also owned a related company named Shoot-N-C Inc. a/k/a Ad Rem, Inc.  On

4-   FIRST AMENDED COMPLAINT

information and belief, prior to assigning all rights in the '371 patent to Birchwood, Mr. Edwards, or his various companies, had marketed and sold flake-off shooting targets under the Shoot-N-C<sup>TM</sup> and E-Zee-C<sup>TM</sup> brand names.  On further information and belief, Birchwood did not make or sell any flake-off shooting target prior to entering it the patent license agreement with Ontario, Inc.

17.     Pursuant to the above-described agreement, Birchwood is the sole and exclusive licensee of the '371 patent, which is titled *Reusable Projectile Impact Reflecting Target for Day or Night Use*, and which issued on February 23, 1993.  A copy of the '371 patent is attached hereto as Exhibit 1.  A copy of the license agreement between Birchwood and Ontario, Inc., and its filing record at the U.S. Patent and Trademark Office, is attached as Exhibit 2.

18.     The '371 patent includes 14 claims directed to reusable projectile impact reflecting targets, including 1 independent claim and 13 claims depending therefrom.

19.     Independent claim 1 of the '371 patent recites:

> A reusable projectile impact reflecting target for day or night use comprising in combination:
>
> a target base and a primary target label,
>
> said target base comprising sheet of backing material substantially forming an overall shape, said target base having an outer surface with a target outline imprinted thereon,
>
> said primary target label comprising a bottom paper layer and a top plastic film layer,
>
> said bottom paper layer comprising a sheet of paper having a forward and a rear surface, said rear surface adapted to be releasably mounted within said target outline, said forward surface having a colored photoreflective ink thereon,
>
> said plastic film layer comprising a transparent strip of plastic having a front and back surface, said back surface, adapted to be mounted on said forward surface of said paper layer, said front surface defining a target image of contrasting colored image contrasting in color to the color of said photoreflective ink, said

5-    FIRST AMENDED COMPLAINT

contrasting ink being adhered to said front surface but not being permanently bonded thereto,

whereby when said primary target label is releasably mounted on said target base, the penetration of a projectile causes said contrasting colored ink to be removed from the plastic film layer front surface point of penetration exposing a clear area larger than the penetration point of the projectile, thereby exposing the photoreflective ink paper layer.

20.    On December 3, 1996, the United States Patent & Trademark Office ("USPTO") issued a second patent, U.S. Patent No. 5,580,063 ("the '063 patent"), which, like the '371 patent, names A.W. Edwards as sole inventor and is titled *Reusable Projectile Impact Reflecting Target for Day or Night Use*.  A copy of the '063 patent is attached as Exhibit 3 hereto.  Mr. Edwards assigned all rights to the application for the '063 patent to Birchwood on about February 13, 1996 and Birchwood recorded that assignment with the USPTO on about March 15, 1996.  Birchwood's Record of Assignment of rights in the application for the '063 patents is attached hereto as Exhibit 4.

21.    The '063 patent includes one claim, and it is directed to reusable projectile impact reflecting targets.

22.    Independent claim 1 of the '063 patent recites (paragraph breaks added):

A reusable projectile impact reflecting target for day or night use comprising in combination:

a target base and a primary target label,

said target base comprising sheet of backing material substantially forming an overall shape, said target base having an outer surface with a target outline imprinted thereon,

said primary target label comprising a bottom paper layer and a top plastic film layer, said bottom paper layer comprising a sheet of paper having a forward and a rear surface, said rear surface adapted to be releasably mounted within said target outline, said forward surface having a colored photoreflective ink thereon,

said plastic film layer comprising a transparent strip of plastic having a front and back surface, said back surface, adapted to be

6-   FIRST AMENDED COMPLAINT

mounted on said forward surface of said paper layer, said front surface defining a target image of contrasting colored image contrasting in color to the color of said photoreflective ink, said contrasting ink being adhered to said front surface by a silicone release agent but not being permanently bonded thereto,

whereby when said primary target label is releasably mounted on said target base, the penetration of a projectile causes said contrasting colored ink to be removed from the plastic film layer front surface point of penetration exposing a clear area larger than the penetration point of the projectile, thereby exposing the photoreflective ink paper layer.

23.     Independent claim 1 of each of the '371 and '063 patents (collectively, "the Edwards patents") recite at least three common required elements of the claimed shooting targets:

a.      A *target base*…comprising [a] sheet of backing material…having an outer surface *with a target outline imprinted thereon*;

b.      A *primary target label*…comprising a bottom paper layer…*having a* forward and a rear surface, said *rear surface adapted to be releasably mounted within said target outline*; and

c.      A *primary target label*…comprising a bottom paper layer…*having a* forward and a rear surface…said *forward surface having a colored photoreflective ink thereon*.

24.     According to the Edwards patents, a "target base…with a target outline imprinted thereon" is a sheet of heavy weight paper having printed target alignment marks located on its outer surface. *See, e.g.*, Exh. 1 ('371 patent), col. 2: ll. 52-55; Exh. 3 ('063 patent), col. 3: ll. 2-4. The imprinted alignment marks indicate where a target label with an adhesive backing should be positioned on the target base.

25.     A "target base" (12) as illustrated in Figure 3 of the '063 Edwards patent, including printed alignment marks, is shown below:

7-   FIRST AMENDED COMPLAINT

*Fig. 3*



26.     According to the Edwards patents, a "primary target label…having a…rear surface adapted to be releasably mounted within said target outline" is a lightweight sheet of paper of pressure sensitive [*i.e.*, adhesive] stock, which is a standard industrial item.  The pressure-sensitive stock is releasably attached to a backing paper, which permits the primary target label to be releasably attached to a target base.  *See*, *e.g.*, Exh. 1 ('371 patent), col. 2: ll. 56-64; Exh. 3 ('063 patent), col. 3: ll. 6-12.

27.     According to the Edwards patents, a "primary target label…having a…forward surface having a colored photoreflective ink thereon" includes, printed on its surface "a flat tint of light color such as fluorescent yellow, which contains an ultraviolet responsive pigment."  *See*, *e.g.*, Exh. 1 ('371 patent), col. 2: ll. 64-66; Exh. 3 ('063 patent), col. 3: ll. 12-15.  The adhesive "primary target label" (14) is illustrated in Figure 7 of the Edwards patents as being cut from a roll of lightweight, flexible pressure-sensitive stock, shown below.  *See also* Exh. 1 ('371 patent), col. 3: ll. 59-68; Exh. 3 ('063 patent) at col. 4: ll. 49-61.

8-   FIRST AMENDED COMPLAINT

*Fig. 7*



**C.      Birchwood Falsely Marks its Target Products With the Edwards Patent Numbers.**

> **1.      The Claims of the Edwards Patents Clearly Do Not Cover Birchwood's
> False-Marked Shoot-N-C® Targets.**

28.      Most of Birchwood's Shoot-N-C® Target products are unpatented and not covered by any claim of the Edwards patents.  The unpatented Shoot-N-C® products include at least the following: Bull's Eye, Silhouette, Sight-In, and Display products.

29.      The great majority of the Shoot-N-C® target packages marked with the Edwards patent numbers have been sold without the "target base having a target outline imprinted thereon" element required by the claims of the Edwards patents.  *See* Exhibit 5 (Shoot-N-C® 8-inch Bull's-Eye target package).  More specifically, the great majority of Shoot-N-C® products sold by Birchwood have not included a sheet of heavy weight paper having printed target alignment marks located on its outer surface.  *See* Exhibit 5.

9-   FIRST AMENDED COMPLAINT

30.     A portion of a typical false-marked Shoot-N-C® target package, the 12-inch Bull's-Eye 5-target pack (SKU No. 34012), highlighting Birchwood's placement of the Edwards patent numbers on the package, is shown below.



31.     On information and belief, the photocopy of the 12-inch by 12-inch Turkey Vital Targets 5-pack (SKU No. 34365) reproduced immediately below illustrates Birchwood's recent attempts to block out the Edwards patent numbers printed on its product packaging by marking over them with a heavy black marker.

10-  FIRST AMENDED COMPLAINT



32.    On information and belief, the obvious attempt to block out the Edwards patent numbers that are printed on this Shoot-N-C® packaging reflects Birchwood's acknowledgement that these packages have been incorrectly marked with the Edwards patent numbers.  On information and belief, Birchwood has taken steps to block or obliterate the patent numbers from others of its flake-off shooting target products, including at least: the 12-inch Shoot-N-C Sight-In Target; the Shoot-N-C Sight-In Kit; the 8-inch Winchester Shoot-N-C Sight-In Target; the Multi-color Dirty Bird Assortment; and the 12-inch and 17-inch Matrix Pasters.

33.    Birchwood's activities in marking out the Edwards patent numbers printed on the packaging for all of these products reflect a clear acknowledgement that these products have been incorrectly marked with the Edwards patent numbers.

34.    Birchwood's past and present Shoot-N-C® Bull's Eye, Silhouette, Sight-In, and Display products are unpatented and not covered by any claim of either of the Edwards patents, or any other Birchwood patent.  Specifically, the Shoot-N-C® Bull's Eye, Silhouette, Sight-In, and

11-  FIRST AMENDED COMPLAINT

Display products lack at least a "target base" and lack a "target outline imprinted" on the missing

target base, as required by independent claim 1 of each patent.

> 2.     **The Claims of the Edwards Patents Clearly Do Not Cover Birchwood's**
> **False-Marked Dirty Bird® Target Products.**

35.     On information and belief, Birchwood introduced its Dirty Bird® target to the

market in about 2004.  By no later than about 2005, Birchwood began marking its Dirty Bird®

target product with the Edwards patent numbers such that the patent numbers were visible to

potential customers and competitors.  In about 2006, Birchwood redesigned its Dirty Bird® target,

including changing the color of the center aiming point from black to red.  Birchwood also

marked this re-designed Dirty Bird product with the Edwards patent numbers.  A copy of a Dirty

Bird® Target product and packaging representative of 2006 is attached as Exhibit 6.

36.     Birchwood's Dirty Bird® Target products are unpatented and not covered by any

claim of the Edwards patents.  For example, the Dirty Bird® Target products lack at least a

"bottom paper layer comprising a sheet of paper having a forward and a rear surface, said rear

surface adapted to be releasably mounted within [a] target outline," as required by independent

claim 1 of each patent.  An example of a falsely marked Dirty Bird® product is the 8-inch Bull's

Eye Target (a 25-pack of which is product number 35825).  A copy of a Dirty Bird® 8-inch Bull's

Eye Target and packaging is attached as Exhibit 6.  This Dirty Bird® target product, like all other

Dirty Bird® target products, lacks the lightweight sheet of paper having an adhesive backing that

is required by each and every claim of the Edwards patents.  Rather, the rear surface of the Dirty

Bird® target is a non-adhesive paper stock, just like in BTI's Insta-View$^{TM}$ target.

37.     Furthermore, the Dirty Bird® target lacks a "forward surface having a colored

photoreflective ink thereon" (*i.e.*, "a flat tint of light color…such as fluorescent yellow").  Rather,

12- FIRST AMENDED COMPLAINT

on information and belief, the forward surface of the Dirty Bird® target's paper layer is un-inked beneath the plastic layer.

38.     Additionally, the Dirty Bird® targets and target packages marked with the Edwards patent numbers are sold without the "target base having a target outline imprinted thereon" element required by the claims of the Edwards patents.  *See* Exhibit 6.  In particular, the Dirty Bird® products sold by Birchwood do not include the required sheet of heavy weight paper having printed target alignment marks located on its outer surface.  *See* Exhibit 6.

**3.     The Claims of the Edwards Patents Clearly Do Not Cover Birchwood's False-Marked Big Burst™ Revealing Targets.**

39.     Birchwood introduced its Big Burst™ Revealing Targets in 2007.  On information and belief, beginning no later than about 2007 Birchwood began marking the packaging for its Big Burst™ target products with the Edwards patent numbers such that the patent numbers were visible to potential customers and competitors.  A copy of the product packaging for a representative Big Burst™ Revealing Target is attached as Exhibit 7.

40.     Birchwood's Big Burst™ Revealing Targets are unpatented and not covered by any claim of the Edwards patents.  For example, the Big Burst™ Revealing Targets lack at least a "target base" and lack a "target base having an outer surface with a target outline imprinted thereon," as required by independent claim 1 of each patent.  An example of a falsely marked Big Burst™ product is the 8-inch / 4-inch Target pack (product number 36818). A copy of the Big Burst™ 8-inch / 4-inch Target pack and packaging is attached as Exhibit 7.

41.     Furthermore, the Big Burst™ target also lacks a "forward surface having a colored photoreflective ink thereon" (*i.e.*, a flat tint of light color…such as fluorescent yellow").  Rather,

13-  FIRST AMENDED COMPLAINT

on information and belief, the forward surface of the Big Burst™ target's paper layer, like the

Dirty Bird®, is un-inked beneath the plastic layer.

42.     Additionally, the Big Burst™ targets and target packages marked with the Edwards

patent numbers are sold without the "target base having a target outline imprinted thereon"

element required by the claims of the Edwards patents.  *See* Exhibit 7.  In particular, the Big

Burst™ products sold by Birchwood do not include the required sheet of heavy weight paper

having printed target alignment marks located on its outer surface.  *See* Exhibit 7.

**D.     Birchwood Regularly Polices and Asserts it Intellectual Property Rights, and is Sophisticated in Intellectual Property Matters.**

43.     In addition to its ownership of the Edwards patents and its assertion of them against

BTI, as discussed at paragraphs 58–67 below, Birchwood regularly polices, asserts and defends

intellectual property rights.  For example, Birchwood filed a lawsuit in this Court on

December 15, 2009, against BTI for a declaratory judgment of non-infringement and invalidity of

BTI's U.S. Patent No. 7,631,877 ("the '877 patent"), relating to flake-off shooting targets.

*Birchwood Labs., Inc. v. Battenfeld Tech., Inc.*, Case No. 0:09-cv-03555-MJD-JJK (D. Minn.).

Birchwood filed that declaratory judgment action against BTI the first day that BTI's '877 patent

issued, having closely monitored the progress of the '877 patent application at the Patent Office

for nearly two years in coordination with Birchwood's outside patent counsel, Mark Deffner.  *See*

Exhibit 8 (Birchwood's Privilege Log produced in Case No. 09-cv-03555-MJD-JJK (D. Minn.)).

44.     Birchwood's privilege log in that case shows that Birchwood's Vice President of

Sporting Goods Mike Wenner, President Daniel Brooks, Marketing Manager Todd Binsfeld and

President Mike Shelton engaged in dozens of communications with Birchwood's outside counsel

in 2008 and 2009 concerning the Edwards patents, Battenfeld's '877 patent application, and other

14-  FIRST AMENDED COMPLAINT

intellectual property issues, such that these employees have gained significant exposure and sophistication in intellectual property matters.

45.    Birchwood also has registered dozens of trademarks, some of which it has applied to shooting sports products.  A print-out listing Birchwood's many trademark registrations is attached hereto as Exhibit 21.

46.    At least three times, Birchwood has filed a lawsuit asserting that its trademark(s) have been infringed.  Attached Exhibit 9 includes the docket listings for those three cases: *Birchwood Lab., Inc. v. Woodsman Gun Care*, Case No. 4:90-cv-00818 (D. Minn.); *Birchwood Lab., Inc. v. Citmed Corp.*, Case No. 3:96-cv-00918 (D. Minn.); and *Birchwood Lab., Inc. v. Do-All Traps, LLC*, Case No. 0:04-cv-00609 (D. Minn.).  In its case against Do-All Traps, Birchwood asserted its rights in a trademark affixed to shooting targets.  *See* Exhibit 9, page 6.

47.    Birchwood also owns a registered trademark in DIRTY BIRD.  As shown in Exhibit 10 hereto, Birchwood filed its application to register the DIRTY BIRD trademark on September 29, 2003, when Birchwood was applying the "™" mark to its Dirty Bird targets.  The DIRTY BIRD mark was placed on the principal register on March 15, 2005, allowing Birchwood to apply the "®" mark to its Dirty Bird targets, signifying DIRTY BIRD's status as a registered trademark.

48.    On information and belief, Birchwood Vice-President of Sporting Goods Mike Wenner plays a central role in the production, marketing, and sales of Birchwood's target products, including those falsely marked.  *See* http://sport.birchwoodcasey.com/ContactUs.aspx (listing "mwenner@birchwoodcasey.com" as the "Vice President" contact for the Sporting Goods Products division of Birchwood-Casey).

15-  FIRST AMENDED COMPLAINT

49.     On information and belief, Mr. Wenner caused Birchwood to update its product catalogs to reflect DIRTY BIRD's elevation from ™ to ® status: The 2005 Birchwood catalog, printed just before the DIRTY BIRD mark became registered, shows Dirty Bird targets carrying the ™ designation.  *See* Exhibit 11.  The 2006 Birchwood catalog, the first printed after the DIRTY BIRD mark became registered, shows Dirty Bird targets carrying the ® designation.  *See* Exhibit 12.

50.     Birchwood also owns a registered trademark in SHOOT-N-C®.  As shown in Exhibit 22 hereto, Birchwood filed its application to register the SHOOT-N-C® trademark on January 16, 1996, shortly after Birchwood licensed from A.W. Edwards and Ad-Rem, Inc. the right to produce and sell targets covered by the '371 patent.  The SHOOT-N-C® mark was placed on the principal register on December 24, 1996, allowing Birchwood to apply the "®" mark to its Shoot-N-C® targets, signifying SHOOT-N-C's status as a registered trademark.

51.     On or before June 2010, Birchwood associated its falsely marked products with the word "patented" on its website ("BIRCHWOOD CASEY manufactures …**patented** self-adhesive Shoot-N-C targets that explode in a bright, fluorescent green color") (emphasis added).  *See* Exhibit 13 (printouts of the Birchwood website from June 2010).  This association, on information and belief, was and is intended to drive sales of the Shoot-N-C®, Dirty Bird® and Big Burst™ targets because the phrase appeared on website pages displaying each of those lines of targets.

52.     Birchwood's false association of the word "patented" with its Shoot-N-C®, Dirty Bird®, and Big Burst™ target lines had its intended effect, as third parties also have touted the purported "patented" nature of those products.  For example, retailers of the Shoot-N-C®, Dirty

Bird®, and Big Burst™ targets have included the word "patented" in their online product listings. *See*, *e.g.*, Exhibit 14 (printouts of websites for third-party retailers of Shoot-N-C® targets).

53.     The foregoing all points to the fact that Birchwood is a sophisticated corporation, with broad experience in obtaining, maintaining, and defending intellectual property rights, including patent rights, and has had, and extensively used, intellectual property legal counsel over at least the past fifteen years.

**E.     Birchwood Has Falsely Marked Its Shooting Target Products with the Intent to Deceive the Public and Stifle Competition.**

**1.     The Edwards License Agreement**

54.     On information and belief, Birchwood first began making and selling the Shoot-N-C® flake-off target in about 1996 after obtaining an exclusive license under the '371 patent from A.W. Edwards' company, Ontario, Inc. ("the Edwards License Agreement").  The Edwards License Agreement "transferred all patent rights" to Birchwood and gave Birchwood the exclusive "right to sell, distribute, manufacture, sublicense, and otherwise exploit the Licensed Technology."  *See* Exhibit 2 at pg. 3.  The Edwards License Agreement allocated 95% of Net Paid Sales to Birchwood for Licensed Products made and sold by Birchwood.  *Id.*

55.     Under the terms of the Edwards License Agreement, Birchwood was obligated to "mark all Licensed Products…or the packaging thereof, with the *appropriate* patent notice."  *See* Exhibit 2, pg. 3 (emphasis added).  The Edwards License Agreement defines "Licensed Products" as "any products incorporating the Patent Rights."  *Id.*  Exhibit A to the Edwards License Agreement identifies the '371 patent and design patent application number 29/038585 as the Patent Rights.  *Id.*

17-  FIRST AMENDED COMPLAINT

56.     Because it was required to mark its targets *appropriately* depending upon whether they incorporated the requirements of the '371 patent claims, Birchwood had a legal obligation to compare the characteristics of its flake-off shooting targets to the requirements of the Edwards patent claims before marking its products with those patent numbers.

57.     Based on the foregoing contractual obligation, on information and belief, Birchwood has understood the relevant structure and features of its Shoot-N-C® target products relative to the scope of the Edwards patent claims.  On information and belief, Birchwood has thus known that the vast majority of the Shoot-N-C® products it has marked with the Edwards patent numbers are not covered by the claims of those patents.

**2.     Birchwood's Aggressive Posturing Concerning its Alleged Patent Protection.**

58.     When Birchwood introduced the Shoot-N-C® product at the largest annual U.S. industry trade show, the Shooting, Hunting, Outdoor Trade Show and Conference ("SHOT Show") in about 1996, Birchwood Vice-President Mike Wenner boasted to SHOT Show attendees, including former BTI employee, Paul Mazan, that Birchwood was expecting the Shoot-N-C® product to be a successful product, that the Shoot-N-C® was protected by patents, and that no one else would be able to sell a competing flake-off target product because the Shoot-N-C® target was protected by the Edwards patents.

59.     On information and belief, Birchwood held a virtual monopoly in the market for flake-off shooting targets from 1995 to 2003, when its first significant competitor, plaintiff BTI, began offering its competing Insta-View™ flake-off target.  On information and belief, Birchwood's controlling position in the flake-off target market was substantially due to aggressive statements made by Mr. Wenner and other Birchwood employees concerning Birchwood's purported exclusive patent rights to make and sell flake-off targets.  On information and belief,

18-  FIRST AMENDED COMPLAINT

potential competitors in the flake-off target market were, and continue to be, deterred by Birchwood's aggressive posturing, including by Birchwood's decision to false-mark its flake-off shooting targets with the Edwards patent numbers and otherwise falsely advertise its products as "patented" when they are not.  On information and belief, Birchwood deliberately elected to false mark its flake-off shooting targets for the express purpose of deterring competitors in order to unlawfully maintain its dominant market position in the market for flake-off shooting targets.

      **3.      Birchwood's Decision Not to Pursue Its Patent Infringement Accusations Against the Insta-View<sup>TM</sup>**

60.      Birchwood's recognition and understanding that the Edwards patents do not cover its Shoot-N-C® product is illustrated by its assertion of those patents against BTI.  In 2003, Birchwood Vice-President of Sporting Goods Mike Wenner accused BTI of infringing the Edwards patents by selling the competing Insta-View™ targets.  Specifically, in a March 7, 2003 letter to then-BTI President Larry Potterfield, Mr. Wenner demanded that BTI take a license to the Edwards patents and cease producing its Insta-View™ targets, among other onerous terms. *See* Exhibit 15 (March 7, 2003 letter from M. Wenner to L. Potterfield).

61.      Like the Shoot-N-C® targets being sold at that time, BTI's Insta-View™ targets were flake-off shooting targets sold without a "target base" or a "target base having a target outline imprinted thereon."  In addition, the rear surface of the Insta-View™'s target, being non-adhesive, was not adapted to be releasably mounted to a "target base," as required by the claims of the Edwards patents.

62.      On information and belief, Birchwood asserted the Edwards patents against BTI because it wanted to continue to enjoy its unlawful monopoly and believed that it could use the

19-  FIRST AMENDED COMPLAINT

Edwards patents to frighten and intimidate BTI into accepting an arrangement that would provide financial benefit to Birchwood from any sales of BTI's competing Insta-View™ targets.

63.     Despite Birchwood's threats with the Edwards patents, BTI continued to market and sell its flake-off Insta-View™ product without agreeing to any of the terms demanded by Birchwood's Mr. Wenner.  In the face of BTI's refusal to acquiesce to its terms, Birchwood did not, and could not, assert the Edwards patents against BTI because the Insta-View™ target lacked key features required by the claims of the Edwards patents.

64.     On information and belief, Birchwood abandoned its infringement claim and did not file a patent infringement suit against BTI because Birchwood Vice-President Mike Wenner, among other Birchwood employees, understood that the claims of the Edwards patents did not cover the Insta-View™ products.  Among other things, Mr. Wenner and other Birchwood employees knew that the Insta-View™ target did not include a target base or a target base with an outline of a target imprinted thereon.

65.     Birchwood's trial counsel, John Krenn, confirmed this conclusion when he admitted in a hearing in another lawsuit between the parties that Birchwood did not sue BTI for patent infringement relating to its manufacture and sale of the Insta-View™ target "due to technical issues with the Edwards patent that would cause the Insta-View target to not infringe the Edwards patent."  Exhibit 16 (Transcript of Jan. 26, 2011, Hearing).

66.     On information and belief, Birchwood also understood that, like the Insta-View™ target, its own Shoot-N-C® targets did not include a target base or a target base with an outline of a target imprinted thereon.  On information and belief, Birchwood knew then and still believes that the structure of the Insta-View™ and the Shoot-N-C® were similar.  *See* Exhibit 17

20-  FIRST AMENDED COMPLAINT

(Birchwood's excerpted Am. Compl. (without exhibits) dated Feb. 3, 2011, *Birchwood Labs., Inc. v. Battenfeld Tech., Inc.*, Case No. 0:09-cv-03555-MJD-JJK, ¶¶ 24-26 (alleging in amended complaint that "[t]he Insta-View™ target was basically copied by Battenfeld from the Birchwood Shoot-N-C® target.").

67.     Birchwood's abandonment in 2003 of its efforts to enforce the Edwards patents against BTI, its admission that BTI's Insta-View™ target did not infringe "due to technical issues," and its belief that the Insta-View™ target was "basically copied … from the Birchwood Shoot-N-C® target" all show that Birchwood believed and knew by at least 2003 that its own Shoot-N-C® target was not covered by the claims of the Edwards patents.

**4.     Birchwood Continues to Falsely Mark its Accused Product with Deceptive Intent.**

68.     Despite knowing that the Shoot-N-C® targets were not covered by the claims of the Edwards patents, upon information and belief, Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks, continued causing Birchwood to mark its Shoot-N-C® targets with the Edwards patent numbers in order to preserve and maintain an unfair competitive advantage in the marketplace arising from the deliberately-created misperception that only Birchwood could lawfully make and sell flake-off shooting targets owing to its ownership and exclusive control of the Edwards patents.

69.     On information and belief, Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks, causes, and has caused since at least 2005, Birchwood to falsely mark, and otherwise falsely advertise, its Dirty Bird® Target products, catalogs, marketing materials, advertising, and product packaging with the Edwards patent numbers.

21-  FIRST AMENDED COMPLAINT

70.     On information and belief, Birchwood Vice-President of Sporting Goods Mike Wenner, with authority and approval from Birchwood President Daniel Brooks, causes the Dirty Bird® targets to be manufactured with a paper substrate lacking an inked front surface or an adhesive rear surface.  Thus, Birchwood knows that its Dirty Bird® Target products do not include three elements required by independent claim 1 of the Edwards patents (*see* ¶¶ 35-38, *supra*), and has known this since first marking its Dirty Bird® products.  In particular, Wenner and Brooks know that the Dirty Bird® targets lack a "target base…comprising [a] sheet of backing material…having an outer surface with a target outline imprinted thereon"; a "primary target label…comprising a bottom paper layer…having a forward and a rear surface, said rear surface adapted to be releasably mounted within said target outline"; and a "primary target label…comprising a bottom paper layer…having a forward and a rear surface…said forward surface having a colored photoreflective ink thereon."

71.     Birchwood's knowledge that the Dirty Bird® targets lack an adhesive backing is demonstrated by the fact that Birchwood prominently advertises on its product packaging, its catalog, and advertising materials the "Self-Adhesive" feature of its two other flake-off targets, the Shoot-N-C® and the Big Burst™ Revealing Targets.  Birchwood does not, however advertise anywhere that the Dirty Bird® targets have a self-adhesive feature.  To the contrary, Birchwood advertises the Dirty Bird® targets' "non-adhesive back" which allows the shooter "to affix to a surface as you wish, add notes and then easily save the targets for future reference."  *Compare* Exhibit 18 (2011 Birchwood catalog) at 6-11, 22 *with id.* at 14.  On information and belief, Birchwood nonetheless deliberately chose to falsely mark its Dirty Bird® products with the Edwards patent numbers in order to deceive its customers, the consuming public, and potential

22- FIRST AMENDED COMPLAINT

competitors concerning the alleged patented nature of those products and to wrongfully deter and suppress competition in the marketplace for flake-off shooting targets.

72.     As shown in its catalogs, Birchwood redesigned its Dirty Bird® target in 2006 (*Compare* Exh. 11 (2005 catalog) *with* Exh. 12 (2006 catalog)) to include a red center aiming point.  Despite having this chance to make its patent markings accurate, Birchwood re-proofed its products and packaging and continued to mark its Dirty Bird® target product with the Edwards patent numbers notwithstanding that product's obvious lack of features required by the claims of those patents.  Birchwood included this false patent marking despite knowing that the design of the Dirty Bird® closely resembled that of BTI's Insta-View target, which Birchwood had already determined did not infringe (*i.e.*, was not covered by any claim of) the Edwards patents.

73.     On information and belief, Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks, caused Birchwood in 2007 to begin marking its Big Burst™ target products, catalogs, marketing materials, advertising, and product packaging with the Edwards patent numbers, despite knowing that the Big Burst™ target products were not, and are not, covered by the claims of the Edwards patents.  This was yet another packaging change where Birchwood was required to analyze the coverage of its patent claims and confirm the appropriateness of marking that packaging with the Edwards patent numbers.  On information and belief, Birchwood knew and understood that the Edwards patents do not read on the Big Burst™ targets, but deliberately decided to mark that product with the Edwards patent numbers anyway in order to unlawfully deter competition and illegally maintain its dominant position in the market for flake-off shooting targets.

23-  FIRST AMENDED COMPLAINT

74.    BTI strengthened its challenge to Birchwood's Shoot-N-C® market dominance by introducing its patented Orange Peel® target line to the shooting sports market at the January 2006 SHOT Show.  At about the same time, Birchwood renewed its false markings on the Dirty Bird®, leaving the purchasing public with the false impression that those targets shared some patented technology with the Shoot-N-C® targets.  The next year, as the Orange Peel® rapidly gained market share against the Shoot-N-C® target, Birchwood introduced a new target, the Big Burst™, copying the Orange Peel®'s black-on-orange color scheme.  Not content to mimic the Orange Peel®'s color palette, Birchwood also false-marked the Big Burst™ in another apparent attempt to piggyback on the Shoot-N-C® target by falsely indicating that the Big Burst™ shared its purported "patented" technology.

75.    Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks, continues to cause the false marking of Birchwood's Big Burst™ target products.  On information and belief, Birchwood has taken this course for the unlawful purpose of preserving an unfair competitive advantage in the marketplace for flake-off shooting targets that arises from the intentionally created misperception that Birchwood's targets are patented and that only Birchwood can lawfully make such targets under the Edwards patents.

76.    On information and belief, Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks, causes Birchwood's Big Burst™ product to be manufactured with a paper substrate lacking an inked front surface and packages those targets without a printed target base.  Thus, Birchwood knows that its Big Burst™ Revealing Targets do not include at least three elements required by independent claim 1 of the Edwards patents.  In particular, Wenner and Brooks know that the Dirty Bird® targets lack a "target base…comprising [a] sheet of backing material…having an outer surface with a target outline imprinted thereon"; a

24-  FIRST AMENDED COMPLAINT

"primary target label…comprising a bottom paper layer…having a forward and a rear surface, said rear surface adapted to be releasably mounted within said target outline"; and a "primary target label…comprising a bottom paper layer…having a forward and a rear surface…said forward surface having a colored photoreflective ink thereon."

77.     In 2008, Birchwood redesigned the packaging for all its Shoot-N-C® targets. Rather than marking its products accurately, Birchwood left on its redesigned packaging a section of text that stated "Shoot•N•C® Target/U.S. Patents #5,188,371 & 5,580,063/All rights protected."  *See, e.g.*, Exh. 5 (copy of representative 2008 product packaging for Shoot-N-C® target).  That patent marking is visible to the potential customers and competitors.  On information and belief, Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks approved the design of the product packaging for the Shoot-N-C®s with the Edwards patent numbers sometime before 2008.  Birchwood carried out this package re-design, highlighting the allegedly patented nature of the Shoot–N-C® targets, despite knowing that the 2008 Shoot–N-C® product was not covered by any claim of the Edwards Patents and did so in order to maintain and preserve an unfair competitive advantage in the market for flake-off shooting targets.  In maintaining its false markings, Birchwood undoubtedly knew that consumers are drawn to the perceived quality of a patented product, and that sales of its unpatented Shoot-N-C® targets were threatened by competition from BTI's patented Orange Peel®.

78.     Sometime in late 2010 or early 2011, Birchwood again changed the design of its product packaging for several of its Shoot-N-C® target products.  In the 2011 product packaging redesign, Birchwood for a third time included the following text on the exterior of a redesigned package, placing it so that it would be visible to potential customers and competitors:

"Shoot•N•C® Target/U.S. Patents #5,188,371 & 5,580,063/All rights protected."  Exhibit 19

25-  FIRST AMENDED COMPLAINT

(copy of relevant part of representative 2011 product packaging for Shoot-N-C® target).  On information and belief, Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks, approved the change of the design of the product packaging for the Shoot-N-C®s in late 2010 or early 2011.  Birchwood carried out this package re-design, highlighting the allegedly patented nature of the Shoot–N-C® targets despite knowing that these 2011 Shoot–N-C® products were not covered by any claim of the Edwards patents and did so in order to maintain and preserve an unfair competitive advantage in the market for flake-off shooting targets.

79.     The purpose of the false marking statute, 35 U.S.C. § 292, is to ensure that the public receives accurate notice of patent rights.  Congress intended that the public rely on marking as a ready means of discerning the status of intellectual property embodied in an article of manufacture or design.

80.     Sometime after this lawsuit was filed in October 2010, Birchwood instructed its employees who package the Shoot-N-C® to use a black magic marker to obliterate the numbers of the still-unexpired Edward patents from the packaging of certain Shoot-N-C® products before shrink-wrapping the product.  *See, e.g.*, Exhibit 20, bottom of pg. 2.  On information and belief, the Birchwood representative who gave that instruction was Birchwood Vice-President Mike Wenner, with authority and approval of Birchwood President Daniel Brooks.  On information and belief, Birchwood's obliteration of the Edwards patent numbers from these Shoot-N-C® products constitutes a belated admission of a fact long known to Birchwood, namely, that these products are in fact not covered by the Edwards patents.

26-  FIRST AMENDED COMPLAINT

81.     Birchwood has succeeded in its strategy of false-marking its target products to deter competition.  By Birchwood Vice-President Mike Wenner's sworn testimony, "From 1995 until 2003, Birchwood was the sole significant producer of Reactive [flake-off] Targets, marketed under the Shoot-N-C® brand of high visibility targets….Today, as in April 2006, Birchwood, Battenfeld, and Champion are the only three sources for Reactive Targets actively selling in the marketplace.  Birchwood has a majority share of the Reactive Target market."  Declaration of M. Wenner dated Feb. 16, 2010 ¶¶ 6, 11 (filed in *Birchwood Labs., Inc. v. Battenfeld Tech., Inc.*, Case No. 0:09-cv-03555-MJD-JJK (D. Minn.), docket 18).

82.     Acts of false marking, such as Birchwood's, deter innovation and stifle competition in the marketplace.  If an article that is within the public domain is falsely marked, then potential competitors may be dissuaded from entering the same market.

83.     Birchwood's false marking of its target products that include flake-off technology has injured the public by discouraging and/or deterring competition, resulting in higher prices in the marketplace for targets that include flake-off technology.

84.     Birchwood's false marking of its target products that include flake-off technology has injured BTI, including, but not limited to, stifling competition in a market in which BTI competes, diverting BTI's sales and causing BTI to lose the goodwill of its customers and potential customers.

## FIRST CLAIM FOR RELIEF: PATENT FALSE MARKING UNDER 35 U.S.C. § 292
### COUNT ONE: SHOOT•N•C®

85.     BTI repeats and re-alleges the allegations of paragraphs 1 through 84 of the Amended Complaint as if fully set forth herein.

27-  FIRST AMENDED COMPLAINT

86.     Birchwood's marking of its Shoot-N-C® Bull's Eye, Silhouette, Sight-In, and Display target products with the Edwards patent numbers was and is a false statement because those products are not covered by any of the claims in either the '371 patent or the '063 patent.

87.     Birchwood's false marking was done for the purpose of deceiving, and with the intent to deceive, the public because the patent markings were and are a misrepresentation regarding the patent status of the Shoot•N•C® target products and Birchwood had knowledge of this falsity.

88.     Birchwood's false marking of its Shoot•N•C® target products makes this an exceptional case within the meaning of 35 U.S.C. § 285.

89.     Birchwood continues to falsely mark its Shoot•N•C® target products and, unless enjoined by this Court, will continue to mark falsely.

90.     Birchwood should be fined in an amount up to $500 for each falsely marked Shoot•N•C® target sold, pursuant to 35 U.S.C. § 292.  BTI is entitled to one-half the penalty levied against Birchwood, with the other half to the use of the United States.

## COUNT TWO: DIRTY BIRD®

91.     BTI repeats and re-alleges the allegations of paragraphs 1 through 90 of the Amended Complaint as if fully set forth herein.

92.     Birchwood's marking of its Dirty Bird™ target products with the Edwards patent numbers was and is a false statement because those products are not covered by any of the claims in either the '371 patent or the '063 patent.

93.     Birchwood's false marking was done for the purpose of deceiving, and with the intent to deceive, the public because the patent markings were and are misrepresentations

28-  FIRST AMENDED COMPLAINT

regarding the patent status of the Dirty Bird® Target products and Birchwood had knowledge of this falsity.

94.     Birchwood's false marking of its Dirty Bird® Target products makes this an exceptional case within the meaning of 35 U.S.C. § 285.

95.     Birchwood continues to falsely mark its Dirty Bird® Target products and, unless enjoined by this Court, will continue to mark falsely.

96.     Birchwood should be fined in an amount up to $500 for each falsely marked Dirty Bird® target sold, pursuant to 35 U.S.C. § 292.  BTI is entitled to one-half the penalty levied against Birchwood, with the other half to the use of the United States.

## COUNT THREE: BIG BURST™

97.     BTI repeats and re-alleges the allegations of paragraphs 1 through 96 of the Amended Complaint as if fully set forth herein.

98.     Birchwood's marking of its Big Burst™ Revealing Targets with the Edwards patent numbers was and is a false statement because those products are not covered by any of the claims in either the '371 patent or the '063 patent.

99.     Birchwood's false marking was done for the purpose of deceiving, and with the intent to deceive, the public because the patent markings were and are misrepresentations regarding the patent status of the Big Burst™ Revealing Targets products and Birchwood had knowledge of this falsity.

100.    Birchwood's false marking of its Big Burst™ Revealing Targets products makes this an exceptional case within the meaning of 35 U.S.C. § 285.

29-  FIRST AMENDED COMPLAINT

101.    Birchwood continues to mark falsely its Big Burst™ Revealing Targets products and, unless enjoined by this Court, will continue to mark falsely.

102.    Birchwood should be fined in an amount up to $500 for each falsely marked Big Burst™ Revealing target sold pursuant to 35 U.S.C. § 292.  BTI is entitled to one-half the penalty levied against Birchwood, with the other half to the use of the United States.

**SECOND CLAIM FOR RELIEF:**

**LANHAM ACT FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)**

103.    BTI repeats and re-alleges the allegations of paragraphs 1 through 102 of the Amended Complaint as if fully set forth herein.

104.    Birchwood's association of its unpatented products with the phrase "patented," or with the Edwards patent markings, constitutes a false or misleading representation of fact regarding the patent status of its marked products.

105.    Birchwood's use of false or misleading representations of fact in commercial advertising or promotion misrepresents the nature, characteristics, or qualities of Birchwood's goods.

106.    Birchwood's use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers.

107.    Birchwood's false or misleading representations of fact are material because they are likely to influence the purchasing decision of the target consumers.

108.    Birchwood's falsely or misleadingly represented products are advertised, promoted, sold and distributed in interstate commerce.

30-   FIRST AMENDED COMPLAINT

109.    BTI will be injured by Birchwood's continued false or misleading representations of fact through the diversion of sales or loss of goodwill.

110.    Birchwood knows that its representations of fact are false or misleading.

111.    Birchwood's false or misleading representations of fact were done with bad faith and malice or reckless indifference to BTI's and consumers' interests.

112.    Birchwood's bad faith false or misleading representations of fact regarding the patented status of its products makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

113.    Birchwood continues to make false or misleading representations of fact regarding the patented status of its products and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

114.    BTI is entitled to an award of Birchwood's profits due to sales of the falsely or misleadingly represented products, any damages sustained by BTI, and the costs of the action, pursuant to 15 U.S.C. § 1117.

<u>**THIRD CLAIM FOR RELIEF:**</u>

<u>**MINNESOTA STATUTORY DECEPTIVE TRADE PRACTICES**</u>

115.    BTI repeats and re-alleges the allegations of paragraphs 1 through 114 of the Amended Complaint as if fully set forth herein.

116.    Minnesota provides a statutory cause of action for claims of deceptive trade practices in Chapter 325D, Section 44 of the Minnesota Statutes.

31- FIRST AMENDED COMPLAINT

117.    Birchwood's association of its unpatented products with the phrase "patented," or with the '371 or '063 patent markings, constitutes a misrepresentation of the characteristics of its products.

118.    Birchwood knows that its misrepresentations of fact are deceptive.

119.    Birchwood makes its misrepresentations willfully.

120.    Birchwood's misrepresentations are calculated to deceive consumers under the ordinary conditions which prevail in the shooting goods trade.

121.    Birchwood's false or misleading representations of fact will have the natural and probable result of deceiving a portion of the target consumer audience.

122.    BTI has been and will continue to be injured by Birchwood's false or misleading representations of fact through the diversion of sales or loss of goodwill.

123.    Birchwood's false or misleading representations of fact were done with bad faith and malice or reckless indifference to BTI's and consumers' interests.

## FOURTH CLAIM FOR RELIEF:

## MINNESOTA COMMON LAW UNFAIR COMPETITION

124.    BTI repeats and re-alleges the allegations of paragraphs 1 through 123 of the Amended Complaint as if fully set forth herein.

125.    Birchwood's association of its unpatented products with the phrase "patented," or with the '371 or '063 patent markings, constitutes a misrepresentation of the nature of its products.

126.    Birchwood knows that its representations of fact are false and misleading.

32-  FIRST AMENDED COMPLAINT

127.    Birchwood's misrepresentations are calculated to deceive consumers under the ordinary conditions which prevail in the shooting goods trade.

128.    Birchwood's false or misleading representations of fact will have the natural and probable result of deceiving a portion of the target consumer audience.

129.    BTI has been and will continue to suffer actual injury by Birchwood's false or misleading representations of fact through the diversion of sales or loss of goodwill.

130.    Birchwood's false or misleading representations of fact were done with bad faith and malice or reckless indifference to BTI's and consumers' interests.

## PRAYER FOR RELIEF

Wherefore, BTI respectfully requests that the Court enter judgment in its favor and against Birchwood on its claims as follows:

a)      Granting injunctive relief enjoining Birchwood and its officers, agents, employees, and all persons or entities in active concert or participation with it, from further false marking and false advertising of Birchwood's Shoot-N-C®, Dirty Bird® and Big Burst™ products as patented, including, but not limited to, false representations concerning coverage of those products by the claims of the Edwards patents;

b)      Granting injunctive relief ordering the destruction of Birchwood articles and packaging bearing false patent marks and requiring the removal of false representations concerning the patented nature of Birchwood's Shoot-N-C®, Dirty Bird® and Big Burst™ products from Birchwood's web site and internet advertising;

33-  FIRST AMENDED COMPLAINT

c)      Awarding damages to BTI adequate to compensate BTI for Birchwood's acts of false marking, false advertising and unfair competition, together with pre-judgment and post-judgment interest thereon;

d)      Imposing a statutory penalty against Birchwood of up to $500 per falsely-marked article, with one-half of the penalty amount being awarded to BTI and one-half of the penalty amount being for the use of the United States;

e)      Awarding to BTI the profits earned by Birchwood from sales of the Shoot-N-C®, Dirty Bird® and Big Burst™ products, in an amount that will be proved at trial;

f)      Finding this to be an exceptional case pursuant to 35 U.S.C. § 285;

g)      Finding this to be an exceptional case pursuant to 15 U.S.C. § 1117;

h)      Increasing the amount of damages awarded to BTI to three times the amount found or assessed by this Court because of the willful and deliberate nature of Birchwood's acts, pursuant to 15 U.S.C. § 1117 and/or 35 U.S.C. § 285;

i)      Awarding to BTI its reasonable attorney fees incurred in this action;

j)      Awarding to BTI its costs incurred in this action; and

k)      Granting such other and further relief as this Court may deem just and proper.

34-  FIRST AMENDED COMPLAINT

## JURY TRIAL DEMAND

BTI respectfully demands a trial by jury on all claims and issues so triable.


DATED:  May 26, 2011          **DORSEY & WHITNEY LLP**

By  /s/ Scott D. Eads
     Paul J. Robbennolt
     Robbennolt.Paul@dorsey.com
     Suite 1500, 50 South Sixth Street
     Minneapolis, MN  55402-1498
     Telephone:  612.340.2864
     Facsimile:  612.340.8856

Of Counsel:

**PERKINS COIE** LLP
Scott D. Eads, OSB No. 910400
SEads@perkinscoie.com
Julia E. Markley, OSB No. 000791
JMarkley@perkinscoie.com
Bryan D. Beel, OSB No. 073408
BBeel@perkinscoie.com
(Attorneys admitted *pro hac vice*)
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Plaintiff Battenfeld Technologies, Inc.


35-  FIRST AMENDED COMPLAINT