# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Battenfeld Technologies, Inc.,

     Plaintiff,

v.

Birchwood Laboratories, Inc.,

     Defendant.

Civ. No. 11-883 (MJD/JJK)

**REPORT AND
RECOMMENDATION**

Bryan D. Beel, Esq., Cody M. Weston, Esq., Julia E. Markley, Esq., Paul T. Fortino, Esq., and Scott D. Eads, Esq., Perkins Coie LLP; and Paul J. Robbennolt, Esq., Dorsey & Whitney LLP, counsel for Plaintiff.

Dean C. Eyler, Esq., John L. Krenn, Esq., and Jeremy L. Johnson, Esq., Gray Plant Mooty Mooty & Bennett, PA, counsel for Defendant.

     This case is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.  (Doc. No. 63.)  Specifically, Defendant argues that Plaintiff's Amended Complaint fails to meet the Rule 9(b) particularity requirement because it does not sufficiently allege that Defendant knew of false marking or intended to deceive the public in falsely marking unpatented products with certain patents that do not read on the products.  The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and D. Minn. Loc. R. 72.1 and 72.2.  (Doc. No. 66.)  For the reasons set forth below, this Court recommends that the motion be denied.

1

## BACKGROUND

Plaintiff Battenfeld Technologies, Inc. ("BTI") "designs, invents, markets and sells products for use in the sport-shooting industry, including shooting targets." (Doc. No. 47, Am. Compl. ¶ 3.)  Defendant Birchwood Laboratories, Inc. ("Birchwood") is also "in the business of making and selling shooting sports products," including shooting targets.  (*Id.* ¶ 4.)  According to Plaintiff's Amended Complaint, Plaintiff and Defendant "are the only two significant suppliers of 'flake-off'[1] shooting targets to U.S. consumers and are in direct competition with one another with respect to the marketing and sales of such products."  (*Id.* ¶ 9.) Specifically, Plaintiff markets the Orange Peel® and Insta-View™ targets, and Defendant markets the Shoot-N-C®, Dirty Bird®, and Big Burst™ targets, which are all shooting target product lines that include flake-off technology.  (*Id.* ¶¶ 11, 12, 13.)[2]

---

[1]     "Flake off" shooting targets "are targets constructed such that impact by a projectile causes an outer ink layer on the surface of the target to flake off in an area surrounding the projectile-impact site, exposing an underlying surface or ink layer that typically has a contrasting appearance (called a 'halo'), thereby rendering more visually obvious the location of the impact site."  (*Id.* ¶ 10.)

[2]     Plaintiff alleges that Defendant began selling its Shoot-N-C® target in about 1995 or 1996 and was the sole significant producer of flake-off targets until 2003.  (*Id.* ¶¶ 13, 54.)  In 2003, Plaintiff entered the market with its Caldwell Insta-View™ target.  (*Id.* ¶ 13.)

**Patent Litigation Background**

The parties each have patents on flake-off shooting targets.  Defendant Birchwood owns or licenses two U.S. patents titled "Reusable Projectile Impact Reflecting Target for Day or Night Use" issued to inventor A.W. Edwards in 1993 and 1996 (the "Edwards patents").  Birchwood has marked its Shoot-N-C®, Dirty Bird®, and Big Burst™ targets with the Edwards patent numbers and promoted those products as "patented."  On December 15, 2009, BTI was issued U.S. Patent No. 7,631,877, titled "Firearm Targets and Methods for Manufacturing Firearm Targets" (the "'877 patent").  The '877 patent also asserts claims regarding shooting target flake-off technology, though not all of the features described in the '877 and Edwards patents are identical.

On December 15, 2009—the same day that BTI was issued the '877 patent—Birchwood filed suit against BTI in the District of Minnesota (Civ. No. 09-3555 (MJD/JJK)).  In that ongoing case, Birchwood seeks a declaration that BTI's '877 patent is invalid and that Birchwood's products do not infringe that patent.  Birchwood's amended complaint alleges, inter alia, that BTI engaged in inequitable conduct by failing to disclose prior art to the U.S. Patent Office.  BTI filed a counterclaim in the 09-3555 action accusing Birchwood's Shoot-N-C® and Dirty Bird® targets of infringing its '877 patent.  The status of Birchwood's action against BTI is that discovery is completed and dispositive motions have been filed, which are set to be heard on December 15, 2011.

After Birchwood started its suit for a declaration that BTI's '877 patent was invalid in December 2009, BTI filed this lawsuit, Civ. No. 11-883 (MJD/JJK), against Birchwood in the Western District of Missouri in October 2010.  On March 28, 2011, Judge Nanette Laughrey granted Birchwood's motion to transfer this case to the District of Minnesota.  (Doc. No. 34.)  Plaintiff BTI's Amended Complaint claims that Defendant Birchwood knows that its Shoot-N-C®, Dirty Bird®, and Big Burst™ targets do not meet the requirements of the Edwards patents that mark those products, thereby violating 35 U.S.C. § 292.  For example, the Edwards patents refer to a target base having an outer surface with a target outline imprinted thereon.  Plaintiff contends that this required element is missing from Defendant's products, and that Defendant has continued to promote its products as patented anyway in a bad faith attempt to gain an unfair competitive advantage.  Plaintiff's Amended Complaint also asserts that Defendant's association of its unpatented products with the phrase "patented" or with the Edwards patent markings constitutes a false or misleading representation of fact under the Lanham Act, 15 U.S.C. § 1125(a).  Finally, Plaintiff's Complaint asserts that Defendant's association of its unpatented products with the phrase "patented" or with the Edwards patent markings constitutes a misrepresentation of the nature of its products under the Minnesota common law doctrine of unfair competition and constitutes a claim of deceptive trade practices under Chapter 325D, Section 44 of the Minnesota Statutes.

4

**Plaintiff's Claims of False Marking**[3]

In 1995, Defendant entered into a license agreement with a company named Ontario, Inc., whereby Defendant obtained an exclusive interest in all rights to U.S. Patent No. 5,188,371 (the "'371 patent"), which is titled "Reusable Projectile Impact Reflecting Target for Day or Night Use."  The license agreement allocated 95% of net paid sales to Defendant for licensed products made and sold by Defendant, and 5% to Ontario, Inc. in royalties.  (Am. Compl. ¶ 54, Ex. 2 at 3.)  In 1996, Defendant entered into a similar agreement with A.W. Edwards with regard to U.S. Patent No. 5,580,063 (the "'063 patent"), also titled "Reusable Projectile Impact Reflecting Target for Day or Night Use."  The '371 and '063 patents name A.W. Edwards as the sole inventor (collectively the "Edwards patents").  Plaintiff alleges, on information and belief, that Defendant "did not make or sell any flake-off shooting target prior to entering i[n] the ['371] patent license agreement with Ontario, Inc."  (*Id.* ¶ 16.)  The '371 licensing agreement states that Birchwood was obligated to "mark all Licensed Products"—defined as "any products incorporating the Patent Rights"—"or the packaging thereof, with the appropriate patent notice[.]"  (*Id.* ¶ 54, Ex. 2 at 3.)

The '371 patent includes one independent claim and thirteen dependent claims.  The '063 patent includes one independent claim.  Independent claim 1 of both Edwards patents requires, among other things, a "target base," "said target

---

[3]      This description of the case is based on Plaintiff's Amended Complaint.

base having an outer surface with a target outline imprinted thereon," and a "primary target label" with a "bottom paper layer" whereby that "bottom paper layer" has a "rear surface adapted to be releasably mounted within said target outline."  (Am. Compl., Ex. 1 at col. 4, l.50 – col. 5, l.11, and Ex. 3, at col. 6, ll.17–43.)

Plaintiff claims that Defendant's Shoot-N-C®, Dirty Bird®, and Big Burst™ targets are not covered by any claim of the Edwards patents, but that Defendant falsely marked its products as covered by the Edwards patents in a bad faith attempt to gain an unfair competitive advantage.  (*Id.* ¶¶ 28, 36, 40.)  According to Plaintiff, a majority of Defendant's Shoot-N-C® target packages have been sold without the "target base having a target outline imprinted thereon" element required by the Edwards patents.  (*Id.* ¶ 29.)  Yet Defendant (specifically Vice-President Mike Wenner, with authority and approval of President Daniel Brooks), marked these products with the Edwards patents.  (*Id.* ¶ 30 (providing a picture of a Shoot-N-C® target pack highlighting the placement of the Edwards patent numbers on the package); *id.* ¶ 68.)  In addition, when Defendant introduced the Shoot-N-C® product at an industry trade show in 1996, Wenner allegedly "boasted" to show attendees, including Plaintiff's former employee Paul Mazan, that Defendant "was expecting the Shoot-N-C® product to be a successful product, that the Shoot-N-C® was protected by patents, and that no one else would be able to sell a competing flake-off target product because the Shoot-N-C® target was protected by the Edwards patents."  (*Id.* ¶ 58.)  Recently,

6

however, after this lawsuit was commenced in October 2010, Defendant has attempted to block out the Edwards patent numbers printed on certain Shoot-N-C® target packs by marking over them with a black marker, or has removed the patent numbers altogether.  (*Id.* ¶¶ 31, 32.)

Plaintiff asserts that in about 2005, Defendant (specifically Wenner, with Brooks' authority and approval), began marking its Dirty Bird® target products with the Edwards patent numbers, and approximately a year later, Defendant redesigned this target, and then marked the re-designed Dirty Bird® target products with the Edwards patent numbers.[4]  (*Id.* ¶¶ 35, 69.)  Plaintiff believes that Defendant "deliberately elected to false mark its flake-off shooting targets for the express purpose of deterring competitors in order to unlawfully maintain its dominant market position in the market for flake-off shooting targets."  (*Id.* ¶ 59.) Plaintiff also asserts that Defendant falsely advertised that the Dirty Bird® target products were covered by the Edwards patents in catalogs, marketing materials, and product packaging.  (*Id.* ¶ 69.)  None of the Dirty Bird® target products, according to Plaintiff, have a "primary target label" with a "bottom paper layer" whereby that "bottom paper layer" has a "rear surface adapted to be releasably

---

[4]     This was about the same time that Plaintiff introduced its patented Orange Peel® target line into the market.  (*Id.* ¶ 74.)

7

mounted within said target outline,"[5] nor do they have a "target base having a target outline imprinted thereon," as required by the Edwards patents.  (*Id.* ¶¶ 36, 38.)  And Plaintiff alleges that Defendant knew that the Dirty Bird® target products lacked the required adhesive backing.  Plaintiff cites the fact that Defendant advertises on its product packaging, its catalog, and advertising materials the "Self-Adhesive" feature of its two other flake-off targets, but not for the Dirty Bird® target products.  (*Id.* ¶ 71.)  Instead, Defendant specifically advertises that the Dirty Bird® targets have a "non-adhesive back" that allows the shooter "to affix to a surface as you wish, add notes and then easily save the targets for future reference."   (*Id.* (citing a 2011 Birchwood catalog attached to the Amended Complaint at Ex. 18).)  Plaintiff attaches a copy of a Dirty Bird® target product as Exhibit 6 to the Amended Complaint.

The Big Burst™ targets, Plaintiff asserts, were introduced in 2007—after the Plaintiff's Orange Peel® targets were gaining market share—and were also marked with the Edwards patents by Vice-President Wenner, with authority and approval from President Brooks.  (*Id.* ¶¶ 39, 73.)  Plaintiff also asserts that Defendant falsely advertised that Edwards patents covered the Big Burst™

---

[5]   Plaintiff construes "rear surface adapted to be releasably mounted within said target outline" to mean that the "bottom paper layer" has to have "an adhesive backing."  This Court need not determine the proper claim construction of these claim terms at this stage of the case, but notes that it does read the terms in the light most favorable to Plaintiff, i.e., requiring an adhesive backing.  This, however, is only for the purpose of determining whether Plaintiff's false-marking claim should be dismissed for failure to properly plead; it is not intended to pre-judge any claim construction issues.

targets in catalogs, marketing materials, and product packaging.  (*Id.* ¶ 73.)

Plaintiff claims that certain Big Burst™ targets lack a "target base" and a "target

base having a target outline imprinted thereon," as required by the Edwards

patents.  (*Id.* ¶¶ 40, 42 (attaching a copy of a Big Burst™ target as Exhibit 7 to

the Amended Complaint).)

Plaintiff asserts that Defendant has continued to mark products with the

Edwards patents, including after it redesigned the packaging for all of its Shoot-

N-C® target products in 2008, and including in late 2010 or early 2011 after

Defendant changed the design of its product packaging for several Shoot-N-C®

target products.  (*Id.* ¶¶ 77, 78 (attaching relevant 2011 packaging as Ex. 19 to

the Amended Complaint).)  Plaintiff filed its original Complaint in this matter on

October 13, 2010.  (Doc. No. 1.)[6]  Sometime thereafter, Defendant (presumably

Vice-President Wenner, with the authority and approval of President Brooks)

instructed employees to use a black magic marker to cover up the Edwards

patent numbers on the Shoot-N-C® target product packages prior to them being

shrink-wrapped.[7]  (*Id.* ¶ 80.)  Plaintiff asserts that Defendant's blocking out the

Edwards patent numbers on these products is an acknowledgment by Defendant

that these products have been incorrectly marked.  (*Id.* ¶ 33.)

---

[6]     The original Complaint was filed in the Western District of Missouri (Doc.
No. 1), and was transferred to this district on April 11, 2011.

[7]     At the hearing on this matter, Plaintiff also represented that Defendant has
since removed the Edwards patent numbers from some but not all of the relevant
packaging.

On May 17, 2011, Defendant filed a Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure (Doc. No. 42), and on May 26, 2011, Plaintiff filed its Amended Complaint.  (Doc. No. 47.)  Plaintiff contends in its Amended Complaint that Defendant has violated 35 U.S.C. § 292 by knowingly marking, with the intent to deceive the public, certain of its products with patent numbers that it knew did not cover those products.  Thereafter, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint, which superseded its previous motion to dismiss, arguing that Plaintiff's allegations of Defendant's knowledge and intent to deceive the public do not satisfy the Rule 9(b) pleading requirements.  (Doc. No. 63, Def.'s Mot. to Dismiss Pl.'s First Am. Compl.; Doc. No. 65, Def.'s Mem. in Supp. of Birchwood Labs., Inc.'s Mot. to Dismiss Pl.'s First Am. Compl. ("Def.'s Mem.") 6–16.)  Specifically, Defendant argues that Plaintiff's allegations regarding Defendant's sophistication in intellectual property matters are irrelevant, and that Plaintiff has failed to allege facts supporting knowledge and intent to deceive in the patent marking of Defendant's Shoot-N-C®, Dirty Bird®, and Big Burst™ targets and has only made allegations that indicate that Defendant *should have known* that its products were not covered by the Edwards patents.  Plaintiff opposes the motion, arguing that it has adequately pleaded marking of an unpatented article and intent to deceive the public.  (*See* Doc. No. 67, Pl.'s Opp'n to Def.'s Mot. to Dismiss First Am. Compl. 12–35 (citing specific paragraphs alleged in the Amended Complaint and citing portions of other complaints in other cases in comparison).)  On July 15, 2011, Defendant

10

filed a Reply.  (Doc. No. 70.)  This Court held a hearing on the motion on July 29, 2011, where both parties were represented by counsel.  (Doc. No. 72.)

## DISCUSSION

## I.      Standard of Review

A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *E.g.*, *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").  In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  But in so doing, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the

11

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009).  Although a complaint need not contain "detailed factual

allegations," it must contain facts with enough specificity "to raise a right to relief

above the speculative level."  *Twombly*, 550 U.S. at 555.

"Rule 9(b)'s particularity requirement applies to false marking claims[.]"  *In

re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011).  Federal Rule

of Civil Procedure 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the
> circumstances constituting fraud or mistake.  Malice, intent,
> knowledge, and other conditions of a person's mind may be alleged
> generally.

Although "knowledge" and "intent" may be averred generally, and a plaintiff may

plead upon information and belief under Rule 9(b) when "essential information

lies uniquely within another party's control," "the pleadings [must] allege sufficient

underlying facts from which a court may reasonably infer that a party acted with

the requisite state of mind."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d

1312, 1327, 1330 (Fed. Cir. 2009); *see also In re BP Lubricants*, 637 F.3d at

1311 ("[A] complaint must in the § 292 context provide some objective indication

to reasonably infer that the defendant was aware that the patent expired.").  A

reasonable inference is one that is plausible and flows logically from the facts

alleged.  *Exergen Corp.*, 575 F.3d at 1329 n.5.  "[A] pleading that simply avers

the substantive elements of a claim sounding in fraud or mistake, without setting

forth the particularized factual bases for the allegations, does not satisfy Rule

9(b)." *In re BP Lubricants*, 637 F.3d at 1311 (citing *Exergen*, 575 F.3d at 1326–27).

In the § 292 context, although "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public," *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362–63 (Fed. Cir. 2010), this presumption only "informs the determination of whether a false marking plaintiff has met Rule 9(b)." *In re BP Lubricants*, 637 F.3d at 1312–13. In other words, having "pled the facts necessary to activate the *Pequignot* presumption is simply a factor in determining whether Rule 9(b) is satisfied; it does not, standing alone, satisfy Rule 9(b)'s particularity requirement." *Id.* at 1313. And proving deceptive intent in false-marking cases requires that the plaintiff show "a purpose of deceit, rather than simply knowledge that a statement is false." *In re BP Lubricants*, 637 F.3d at 1313 (quoting *Pequignot*, 608 F.3d at 1363). As a result, the heightened pleading requirement of Rule 9(b) prevents a plaintiff from using discovery as a fishing expedition; it "acts as a safety valve to assure that only viable claims alleging fraud or mistake are allowed to proceed to discovery." *Id.* at 1310.

## II.   Whether Plaintiff has Alleged Fraud with Sufficient Particularity

Section 292 provides, in relevant part:

(a) . . . Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word "patent" or any word or number importing that the same is patented for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense.

13

(b) Any person may sue for the penalty, in which even one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292(a)–(b).  To establish a claim for false marking under this section, the plaintiff must demonstrate two elements: (1) the defendant marked an unpatented article; and (2) the defendant intended to deceive the public.  *Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009).  Knowledge of falsity is established by showing that the defendant "did not have a reasonable belief that the articles were properly marked."  *Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352–53 (Fed. Cir. 2005).  Intent to deceive exists when an individual acts with knowledge that "what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true."  *Id.* at 1352.  "[B]ecause [35 U.S.C. § 292] requires that the false marker act 'for the purpose of deceiving the public,' a purpose of deceit, rather than simply knowledge that a statement is false, is required."  *Pequignot*, 608 F.3d at 1363.

Defendant argues that the Amended Complaint fails to allege any objective underlying facts upon which a court can reasonably infer that Defendant knew that the Edwards patents did not cover its products when it was marking those products or that Defendant intended to deceive the public.  Defendant asserts that, if anything, Plaintiff's allegations show inadvertence, mistake, or negligence. Plaintiff asserts that it has satisfied the Rule 9(b) requirements by alleging several things, including facts related to the patent-claim requirements,

14

Defendant's sophistication, Defendant's masking or removing of the Edwards patent numbers from products, Defendant's license agreements with regard to the Edwards patents, Defendant's posturing in the shooting-target market, Defendant's decision to not pursue litigation against Plaintiff in 2003, and Defendant's revisions to marketing materials and product packaging.

### A.    Marking an Unpatented Article

In the Amended Complaint, Plaintiff details the relevant claim elements and terms from the Edwards patents and also sets forth facts explaining why Defendant's products do not read on the Edwards patents.  Plaintiff also states who the marking decision-makers were and how and when the products at issue were marked by Defendant.  Although Defendant may disagree with Plaintiff's claim interpretation, this Court agrees that, after reviewing the allegations of the Amended Complaint in the light most favorable to Plaintiff, Plaintiff's allegations as to marking an unpatented article are sufficient.  Therefore, for purposes of Rule 9(b), Plaintiff has properly pled the first element of a § 292 claim.

The real dispute here is whether Plaintiff has pled facts sufficient to support the claim that the marking was "done with the intent to deceive the public."  This Court concludes, as further explained below, that while some of the allegations on their own may not have supported an inference of intent to deceive, reading the allegations as a whole does support this plausible inference.  Further, contrary to Defendant's argument, this Court concludes that such an inference of intent to deceive applies to the false marking on all of products

15

alleged, not just the Shoot-N-C® targets.  This is because several of the facts alleged relating to Defendant's sophistication and conduct, and regarding the patent-claim requirements, are not limited only to the Shoot-N-C® targets.  This Court notes that the best information about whether Defendant intended to deceive is in Defendant's possession alone.  It is unlikely that any false-marking case would survive a motion to dismiss if courts required plaintiffs to come forward with the smoking gun before the start of a suit.  All that a court can expect at this stage is that the plaintiff have a sufficient amount of evidence from which the court can plausibly infer an intent to deceive with false marking.  This Court concludes that Plaintiff has sufficiently pled intent to deceive in connection with the marking of the Shoot-N-C®, Dirty Bird®, and Big Burst™ products with patents that do not cover the marked products, and therefore counts 1, 2, and 3 in Claim 1 of the Amended Complaint should not be dismissed.

### B.    Presumption of Intent

Plaintiff has highlighted pertinent and required language from the Edwards patents, and provided the Court with a detailed visual demonstration, showing that the respective shooting targets, when reading the patent language in the light most favorable to Plaintiff, do not contain features covered by the Edwards patents that are marked on the products.  The Court disagrees with Defendant's assertion that the question regarding whether the Edwards patents cover the products at issue involves a "complicated analysis of the patents."  (Def.'s Mot. 15.)  It is not complicated to read the rather simple independent claims

referenced by Plaintiff and to analyze whether Defendant's products, which themselves utilize fairly simple technology, read on those claims when utilizing Plaintiff's reasonable interpretation of the claim terms.  It seems rather straightforward that, according to Plaintiff's allegations, the Edwards patents require that there be a target base and a target label with an adhesive backing, and that the target base have imprinted alignment marks that indicate where the target label should be positioned.  And both the products attached as exhibits to the Amended Complaint and Plaintiff's visual demonstration at the hearing persuasively showed that Defendant's products at issue were missing one or more of the required elements.

Plaintiff bases its claim on more than a comparison of the claim language to the products at issue.  Plaintiff further alleges that Defendant's Vice-President of Sporting Goods Mike Wenner sent a cease and desist letter to Plaintiff's President Larry Potterfield in 2003, accusing Plaintiff of infringing the Edwards patents by selling its competing Insta-View™ targets, and demanding that Plaintiff take a license to the Edwards patents.  (*Id.* ¶ 60 (attaching the March 7, 2003 letter from Wenner to Potterfield as Ex. 15 to the Amended Complaint).) Plaintiff asserts that at that time the Insta-View™ targets and Defendant's Shoot-N-C® targets were alike in that they were both flake-off shooting targets sold without a "target base" or a "target base having a target outline imprinted thereon," and that the Insta-View™ targets also did not have an adhesive backing that allowed for them to be releasably mounted to a target base.  (*Id.*

17

¶ 61.)  Yet, after Plaintiff decided to continue its sales of its Insta-View™ targets,

Defendant did not pursue litigation against Plaintiff for infringement on the

Edwards patents.  (*Id.* ¶ 63.)  Plaintiff alleges, on information and belief,[8] that

Defendant chose not to file a patent-infringement suit against Plaintiff because it

"understood that the claims of the Edwards patents did not cover the Insta-

View™ products.  (*Id.* ¶ 64.)  And Plaintiff asserts that Defendant also thus knew

that the Edwards patents did not cover its own Shoot-N-C® targets because it

was Defendant's belief that the structure of the Insta-View™ and the Shoot-N-C®

targets were similar, and thus knew in addition that neither product was covered

by the Edwards patents because neither included a target base or a target base

having a target outline imprinted thereon.  (*Id.* ¶ 66 (citing Defendant's Amended

Complaint in a declaratory judgment action brought by Defendant against Plaintiff

where Defendant alleged that "[t]he Insta-View™ target was basically copied by

Battenfeld from the Birchwood Shoot-N-C® target").)

        In this Court's view, these facts sufficiently support Plaintiff's assertion that

Defendant must have performed an analysis to determine the scope of the

Edwards patents at least in and around 2003.  And at a minimum, the allegations

---

8        In support, Plaintiff alleges that Defendant's trial counsel in *Birchwood
Laboratories, Inc. v. Battenfeld Technologies, Inc.*, 09-3555 (MJD/JJK), stated
that Defendant did not sue Plaintiff for patent infringement relating to its
manufacture and sale of the Insta-View™ target "due to technical issues with the
Edwards patent that would cause the Insta-View target to not infringe the
Edwards patent."  (*Id.* ¶ 65 (quoting a January 26, 2011 hearing transcript
attached to the Amended Complaint at Ex. 16).)

that Defendant abandoned its efforts to enforce the Edwards patents against Plaintiff in 2003, its counsel later stating that Plaintiff's Insta-View™ target did not infringe "due to technical issues," and its apparent belief that the Insta-View™ target was "basically copied . . . from the Birchwood Shoot-N-C® target," along with the plain language of the Edwards patent claims, provide the "specific underlying facts" from which it could be plausibly inferred that Defendant knew that its Shoot-N-C® target was not covered by the Edwards patents and that there was a "purpose of deceit." *See In re BP Lubricants*, 637 F.3d at 1311–13; *see also Pub. Patent Found., Inc. v. GlaxoSmithKline Consumer Healthcare, L.P.*, No. 09 Civ. 5881 (RMB), 2011 WL 1142917, at *2 (S.D.N.Y. Mar. 22, 2011) (denying a motion to dismiss a false-marking claim stating that the prior litigations enforcing the patents at issue "would have given [Defendant] a working knowledge of the expiration dates and scopes of [those] patents"); *see also Brinkmeier v. Graco Children's Prods., Inc.*, 684 F. Supp. 2d 548, 553 & n.5 (D. Del. 2010) (finding sufficient allegations of intent to deceive where a plaintiff alleged that the defendant revised its markings three times after the patent had expired and was involved in an infringement suit relating to the patent in question).

Defendant argues that there are numerous reasons why a company in Defendant's position would choose to not commence patent litigation against a competitor like Plaintiff, including the substantial expense and risks involved. But Plaintiff is not required at this stage in the proceedings to *prove* deceptive intent;

19

it need only provide "underlying facts from which a court may reasonably *infer*

that [the defendant] acted with the requisite state of mind." *In re BP Lubricants*,

637 F.3d at 1311 (emphasis added).  Defendant's efforts in 2003 to enforce the

Edwards patents "would have given [Defendant] a working knowledge of the . . .

scopes of [those] patents." *Publ. Patent Found. Inc.*, 2011 WL 1142917 at *2

(quotations omitted).  Defendant's involvement in that pre-litigation activity is an

"objective indication" that allows the Court to "reasonably infer that the

[D]efendant was aware that the patent[s]" did not read on the products at issue.

*In re BP Lubricants*, 637 F.3d at 1311; *see also Brinkmeier v. Graco Children's

Prods., Inc.*, 767 F. Supp. 2d 488, 498 (D. Del. 2011) (stating that because

defendant's attorneys litigated a related patent, that fact supported plaintiff's

assertion that defendant "knew or should have known that [defendant's] products

were not covered by the . . . patent").

As explained above, knowledge of falsity is established by showing that

the defendant "did not have a reasonable belief that the articles were properly

marked." *Clontech Labs.*, 406 F.3d at 1352–53.  Based on the above, and

reading Plaintiff's allegations in the light most favorable to Plaintiff, this Court

concludes that it can plausibly infer that Defendant did not have a reasonable

belief that the articles were properly marked at least from 2003 going forward,

and Defendant continued to mark these articles with the patent numbers after

this point in time.  Therefore, Plaintiff has specifically supported how the

rebuttable presumption of intent to deceive is triggered because Plaintiff has

alleged a false statement combined with knowledge of its falsity.  *See Pequignot*, 608 F.3d at 1362 (acknowledging the presumption of deceptive intent that exists when a product is knowingly marked with an unexpired patent that does not cover the product); *see also Clontech Labs., Inc.*, 406 F.3d at 1352 ("[T]he fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity is enough to warrant drawing the inference that there was a fraudulent intent.").  But Plaintiff has alleged more.

### C.    Sophistication

Although general allegations that a defendant is a "sophisticated company" or "knew or should have known" of the false marking are insufficient, *see In re BP Lubricants*, 637 F.3d at 1312, allegations of a company's sophistication in intellectual-property matters are not irrelevant as Defendant suggests.  The court in *In re BP Lubricants* stated only that "conclusory allegations" regarding sophistication are "insufficient."  *Id.* at 1309.  Here, Plaintiff supported its allegations that Defendant is sophisticated in intellectual-property matters with detail that was lacking in the complaint in *In re BP Lubricants*.  Specifically, Plaintiff details Defendant's knowledge of intellectual-property law by identifying patent-infringement law suits, trademarks, and trademark-infringement law suits, and describes the people with knowledge within the company as to intellectual property and marking matters.  And it also ties Defendant's sophistication in patent-related matters to specific threatened litigation involving the exact patents that are alleged to be the patents-at-issue in the false-marking claims, and points

21

out that Defendant also filed suit against Plaintiff in 2009 for declaratory judgment of non-infringement and invalidity of Plaintiff's '877 patent, which also relates to flake-off shooting targets.  (Am. Compl. ¶¶ 43, 60–67.)  Based on information gained in relation to that latter suit, Plaintiff specifically names several of Defendant's executives who were communicating with its outside counsel in 2008 and 2009 regarding the Edwards patents and other intellectual-property matters that would indicate their sophistication in this area.  (*Id.* ¶ 44.)  Therefore, Plaintiff has not just generally alleged that Defendant is sophisticated in intellectual-property matters, it has specifically identified Defendant's extensive experience policing, asserting, and defending its intellectual-property rights in the technology area encompassed by the patents-at-issue in the false-marking claims.  Thus, this Court concludes that Plaintiff has put forth specific underlying facts that support why Defendant's sophistication at least supports an inference of deceit.

### D.    License Agreements

Plaintiff also alleges that Defendant initially acquired the Edwards patents pursuant to license agreements.  These allegations, although not conclusive,[9] do

---

[9]    This case is unlike *Luka v. Procter & Gamble Co.*, No. 10 C 2511, 2011 WL 1118689, at *4 (N.D. Ill. Mar. 28, 2011), where the licensing agreement specifically disclosed the expiration dates of the pertinent patents, and the court found that this "provide[d] some objective indication to reasonably infer that the defendant was aware that the patent expired."  Here, the license agreement did not specifically disclose the intended scope of the patent claims.  However, *Luka*
(Footnote Continued on Next Page)

support an inference that Defendant performed due diligence on the Edwards

patents at the time it entered into the agreements, giving Defendant a working

knowledge of the scope of those patents.  *See Brinkmeier*, 767 F. Supp. 2d at

498 (stating that the "chain of assignments support[ed] Plaintiff's assertion,

based upon information and belief, that Graco performed due diligence on the

patents it was acquiring, which would have given it a working knowledge of the

expiration dates and scopes of the patents").  And, since Defendant continued to

mark products with the Edwards patents, Defendant presumably continued to

pay licensing fees for the use of the Edwards patents, and therefore it was, at a

minimum, monitoring the usages of the patent numbers.

Further, the fact that Defendant entered license agreements for the use of

the Edwards patents—read in conjunction with the above facts that support an

inference of knowledge and intent to deceive—supports an additional inference

that Defendant weighed the benefits of marking its products with the Edwards

patents with the possible outcomes from not marking its products with the

Edwards patents.  Because this weighing requires conscious decision-making on

Defendant's part, it supports the inference that the decision to mark was an

intentional one.

---

(Footnote Continued from Previous Page)
is instructive in that consideration of licensing agreements can be relevant to
inquiry of Defendant's knowledge and intent.

### E.    Alterations

The court in *In re BP Lubricants* instructed that there are several ways to support an inference of intent, including that intent to deceive can be inferred from facts showing that the defendant made multiple revisions of the marking after the point in time when the false marking would have been known.  637 F.3d at 1312 (stating that naming of specific individuals, "alleg[ing] that the defendant sued a third party for infringement of the patent" after the basis for the false marking claim was known, or "alleg[ing] that the defendant "made multiple revisions of the marking" after the basis for the false marking claim was known are ways to set forth facts upon which intent to deceive can be reasonably inferred).  And other federal courts have similarly followed suit, concluding, for example, that "allegations of multiple product packaging updates, particularly where such allegations are coupled with other indicia of the defendant's knowledge of a patent's expiration, have been deemed sufficient to establish intent to deceive."  *Hollander v. B. Braun Med., Inc.*, No. 10-835, 2011 WL 1376263, at *4 (E.D. Pa. Apr. 12, 2011) (quotations omitted).  The list provided by the *In re BP Lubricants* court, however, was not exhaustive.  *See Sunshine Kids Juvenile Prods., LLC v. Indiana Mills & Mfg., Inc.*, No. C10-5697BHS, 2011 WL 2020761, at *10 (W.D. Wash. May 24, 2011) (stating that the *In re BP Lubricants* "court did not establish an exhaustive list of ways to show intent or create elements that must be met in pleading false marking claims . . . . [but rather] was illustrating that there are many ways to support an inference of

intent"); *San Francisco Tech., Inc. v. The Glad Prods.*, No. 5:10-cv-00966-JF/PSG, 2011 WL 940852, *4 (N.D. Cal. Mar. 18, 2011) (stating that there "are several ways in which intent may be alleged," for example, "a relator could allege that a defendant has leveraged its patent through public advertising in an attempt to influence consumers or knowingly has asserted its expired patents against competitors").

Plaintiff alleges that Defendant must have known that its products were not covered by the Edwards patents at least by 2003 when it chose not to pursue infringement claims against Plaintiff because Plaintiff's Insta-View target, like Defendant's own Shoot-N-C® target, did not include a target base or a target base with an imprinted outline. Defendant continued, however, to promote its products as covered by the Edwards patents in catalogs, marketing materials, and advertising. And Plaintiff points out that Defendant changed the packaging on some of the products-at-issue in 2006, 2008, and in 2010 or 2011, yet continued to include the references to the Edwards patents on each package redesign. Plaintiff provides detail about the text on packaging, and attaches copies of representative packaging to the Amended Complaint. *Cf. Hollander v. B. Braun Med., Inc.*, No. 10-835, 2011 WL 1376263, at *3 (E.D. Pa. Apr. 12, 2011) (dismissing counts based on changes in product packaging when the complaint did not provide detail on "what these product packaging updates entailed, whether the packaging was revised a single time or multiple times, and the time frame during which these updates occurred"). In addition to the product

25

packaging changes, Plaintiff points out that at some point on or before June

2010, Defendant added information on its website pages displaying the Shoot-N-

C®, Dirty Bird®, and Big Burst™ target product lines so that it stated

"BIRCHWOOD CASEY manufactures . . . *patented* self-adhesive Shoot-N-C

targets that explode in a bright, fluorescent green color[,]" therefore implicitly

touting that its products are covered by the Edwards patents.  (Am. Compl. ¶ 51

(emphasis added) (attaching printouts from the Birchwood website from June

2010 as Exhibit 13 to the Amended Complaint).)  Further, Defendant at some

point started to black-out or remove the patent numbers printed on some of the

product packaging after this lawsuit was filed in October 2010.  Although

Defendant's blackening-out of the Edwards patent numbers on some of the

products-at-issue may not conclusively establish bad faith, that allegation paired

with the fact that Defendant only began to remove or cover the patent numbers

after this litigation began allows for a plausible inference, at the pleading stage,

of deceptive intent.

These facts, coupled with the facts showing Defendant's knowledge of the

scope of the Edwards patents, provide more than conclusory allegations; they

provide the required support for a reasonable inference of intent to deceive under

Rule 9(b)'s heightened pleading standard.

### F.   Expired-Patent Case vs. Scope-of-the-Patent Case

Defendant makes much of the fact that the cases that Plaintiff relies on

involve the alleged false marking of an expired patent, rather than false marking

of an unexpired patent where the patent holder would have had to make a determination as to the scope of the patent at issue in the marking.  But this Court finds these cases persuasive, and does not believe that the Federal Circuit meant to limit its ruling in *In re BP Lubricants* so narrowly.  Whether the allegation is that a party violated § 292 because of false marking of an expired patent, or because of false marking of a patent that does not read on the product, the matter remains the same –an inference that the party knew of the basis for the false marking must be supported by facts (i.e., facts supporting an inference that the party either knew that the patent was expired, or knew that the patent scope did not cover the product being marked).  Therefore, the guidance that the Federal Circuit has given to plaintiffs for what types of facts can be plead on which intent to deceive can be reasonably inferred is relevant and applies to patent-scope-false-marking claims as well.

The Federal Circuit in *In re BP Lubricants* concluded that the complaint at issue failed to meet the Rule 9(b) requirements because it provided only generalized allegations rather than specific underlying facts from which the court could reasonably infer the requisite intent.  637 F.3d at 1309, 1312 (holding that "a complaint alleging false marking is insufficient when it only asserts conclusory allegations that a defendant is a 'sophisticated company' and 'knew or should have known' that the patent expired").  Here, Plaintiff has followed the advice provided by the Federal Circuit regarding examples of allegations that might permit a court to draw an inference of intent to deceive.  There, the court

27

acknowledged that the naming of specific individuals is one way to set forth facts on which intent to deceive can be reasonably inferred, and recognized that a plaintiff might also "allege that the defendant sued a third party for infringement of the patent" after the basis for the false marking claim was known (i.e., in *In re BP Lubricants* it was after the patent expired), "or made multiple revisions of the marking" after the basis for the false marking claim was known (i.e., in *In re BP Lubricants* it was after expiration). *In re BP Lubricants*, 637 F.3d at 1312. Because Plaintiff has pleaded facts that the court in *In re Lubricants* and subsequent courts have specifically found sufficient to allege a plausible inference of intent to deceive, this Court's recommendation to deny dismissal at this stage is consistent with the current status of the case law.

## CONCLUSION

In sum, the law requires Plaintiff to allege sufficient facts from which a plausible inference of knowledge and intent to deceive can be drawn. Plaintiff's allegations, when read in total, are sufficient to reasonably support such an inference with respect to Defendant's marking of its shooting targets with inapplicable patents. As the court in *Sunshine Kids* pointed out, "[t]his is not a case of a vexatious violation hunter on a fishing expedition. Here, . . . [Plaintiff's] complaint has given detailed notice of both its false marking claims and its strategies for overcoming the high bar for proving deceptive intent." 2011 WL 2020761, at *10. Accordingly, this Court concludes that Plaintiff has plausibly stated claims for false marking of Defendant's Shoot-N-C®, Dirty Bird®,

and Big Burst™ shooting targets.[10]

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings

herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant's Motion to Dismiss Plaintiff's First Amended Complaint

(Doc. No. 63), be **DENIED**.


Date: September 15, 2011              *s/ Jeffrey J. Keyes*
                                      JEFFREY J. KEYES
                                      United States Magistrate Judge


Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**September 29, 2011,** a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo

---

[10]     Defendant also appears to have moved for dismissal of Plaintiff's Lanham
Act false advertising and unfair competition claims based on "preemption."  (*See*
Doc. No. 65, Def.'s Mem. 16–18.)  This Court, however, finds Defendant's four-
paragraph argument nearly incomprehensible.  At the hearing on this matter, this
Court gave Defendant an opportunity to clarify its argument.  The presentation,
however, was less than persuasive.  Nevertheless, because this Court concludes
that the Rule 9(b) pleading requirements were met with regard to "intent to
deceive" this Court also concludes that the Rule's requirements were met with
regard to any "bad faith" requirement in connection with the Lanham Act false
advertising and unfair competition claims.  Therefore, this Court recommends
that Plaintiff's Lanham Act false advertising and unfair competition claims should
not be dismissed.

determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.